Joel KATCOFF and Allen M. Wiedner, Plaintiffs,

v.

Clifford L. ALEXANDER, Jr., Secretary of the Army; the Department of the Army; and the Department of Defense, Defendants.

No. 79 C 2986.

United States District Court, E.D. New York.

Aug. 20, 1980.

See also, 582 F.Supp. 463.

Joel Katcoff, pro se.

Allen M. Wieder, pro se.

Edward R. Korman, U.S. Atty., Eastern District of New York, Brooklyn, N.Y., for defendants; Richard P. Caro, Asst. U.S. Atty., Brooklyn, N.Y., Arnold J. Melnick, Colonel, JAGC; Scott Majors, Major, JAGC; Roy L. Dodson, Major, JAGC, Washington, D.C., of counsel.

Memorandum of Decision and Order

MISHLER, District Judge.

Seeking both declaratory and injunctive relief against any continuation of the United States Army's chaplaincy program, two federal taxpayers instituted this action against Clifford L. Alexander, Secretary of the Army, the Department of the Army and the Department of Defense. The plaintiffs, Joel Katcoff and Allen M. Wied-

·er, allege that the chaplaincy program constitutes an establishment of religion in violation of the First Amendment of the United States Constitution.

The defendants have moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings on the grounds that: (1) the plaintiffs lack standing to challenge the Army chaplaincy program; (2) the Army chaplaincy program, its authorizing statute and implementing regulations do not violate the First Amendment; and (3) the plaintiffs' challenge presents a political question not subject to judicial review.

For the reasons set forth below the defendants' motion is in all respects denied.

*The Complaint*

According to the complaint the plaintiffs, citizens of the United States and residents of this district, "have paid and expect to continue to pay United States income taxes." (¶ 3). The defendants are charged with the responsibility for the organization and operation of the United States Army. (¶ 4).

According to paragraph 5, the Army's chaplaincy program is authorized by 10 U.S.C. § 3073, which provides that "there are chaplains in the Army." Paragraphs 6 and 7 set forth in some detail the operational scheme of the chaplaincy program, at least as it exists on paper. Paragraph 6 charges that the program involves the expenditure of public funds for a "comprehensive religious program" including but not limited to payment for: the salaries of chaplains and other religious personnel; religious facilities; sacred items; denominational literature and chaplain kits; religious publications of the Department of the Army; missions, retreats and religious emphasis weeks; the professional education and training of chaplains; and a religious library. The official duties of Army chaplains as set forth in 10 U.S.C. § 3547, Army Regulation 165–20 and Field Manual No. 16–5, are identified in paragraph 7. These duties include: holding appropriate religious services such as services of worship, marriages, baptisms, funerals and prayer breakfasts; providing religious education including religious classes, individual instruction, cultural groups, choral groups, leadership development programs, religious dance, drama and films; and developing pastoral relationships with members of the command through visits with soldiers and their families and through guidance counseling and other forms of spiritual assistance.

Paragraphs 9 through 23 present additional factual as well as legal allegations. Many of the factual and legal contentions are interwoven. Thus, it is charged that the United States "by design and appearance lends its prestige, influence and power to organized religion by granting commissions, rank and uniform to Army chaplains" (¶ 9); that the Army chaplaincy is designed to inculcate religious values and thus provides encouragement for religious activity among the troops (¶ 10); that because chapels and other religious facilities may be used only for religious and allied purposes the government favors religion over non-religion (¶ 11); that by granting scheduling priority to general Protestant services over Protestant denominational services the government favors one Protestant rite over others (¶ 12); and that because clergy whose denominations do not have endorsing agencies recognized by the Armed Forces Chaplain's Board are "effectively excluded from the chaplaincy" the system favors certain religions over others (¶ 13). Moreover, it is alleged that the government promotes and enforces its own religious viewpoint through a mandatory unified curriculum of religious education (¶ 18). It is also contended that church participation in the recruitment and selection of chaplains, the requirement that chaplains maintain an active relationship with civilian religious bodies, and the government's contracts with religious organizations for the purpose of providing religious services all constitute excessive entanglement between state and church. (¶¶ 20, 21, 22).

Other factual claims are set forth without legal argument. For example, it is

alleged that the government authorizes the sale, donation or transfer of excess religious items to civilian religious organizations (¶ 14), and that the Army chaplains are involved in civilian fund raising (¶ 15). Similarly, it is alleged that Army chaplains are authorized to display and distribute denominational literature (¶ 16); that the government provides religious education to "military personnel and their impressionable children" (¶ 17); and that the government provides a program of professional development for chaplains (¶ 19).

All of these practices "among others" demonstrate, according to the complaint, that "Title 10, United States Code, Sections 3073 and 3547, and the regulations and rules promulgated thereunder, insofar as they result in the expenditure of public funds for religious activities, are on their face and as construed and applied by the defendants laws respecting an establishment of religion in violation of the First Amendment of the United States Constitution ...." (¶ 23).

Furthermore, the complaint charges that the chaplaincy program serves to inhibit the right of military personnel to the free exercise of their religion guaranteed by the First Amendment (¶ 24). Many of the practices alleged earlier in the complaint in support of plaintiffs' Establishment Clause claim are realleged in support of this contention. Thus, the complaint attacks the use of a uniform curriculum (¶ 25) and the requirement that chaplains provide "general Protestant services" (¶ 27). The complaint alleges that the free exercise rights of members of the Army are inhibited by restrictions on the types of literature which may be distributed by chaplains (¶ 26), a limitation on the chaplaincy to members of the Protestant, Catholic and Jewish faiths (¶ 28), educational requirements for chaplain appointments (¶ 29), and denomination-

al quotas for chaplains based on the national population as a whole rather than the composition of the Army alone (¶ 30). Finally, it is alleged that the free exercise of religion is inhibited in that the military commander, not the chaplain or the church, has the ultimate responsibility for the religious programs in the military and because promotion decisions regarding chaplains are made by the government, not the chaplain's church (¶¶ 32, 32). These numerous allegations culminate in the statement that "[t]he constitutional rights of Army personnel and their dependents to freely exercise their religion can better be served by an alternative chaplaincy program which is privately funded and controlled." (¶ 33).

As we noted at the outset the complaint prays for both declaratory and injunctive relief. Plaintiffs ask this court to declare that the Army chaplaincy program is unconstitutional as violative of the First Amendment and to enjoin the defendants from approving or otherwise providing funds or support in any respect to religious activities in the Army.[1]

*Discussion*

*Standing*

■ Initially, of course, we must determine whether the plaintiffs, solely by virtue of their status as federal taxpayers, have standing to maintain the instant action. Our point of departure in this inquiry is *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). There, the Supreme Court granted standing to federal taxpayers seeking to enjoin as unconstitutional the expenditure of federal funds under Titles I and II of the Elementary and Secondary Education Act of 1965. The plaintiffs contended that federal funds appropriated under the Act were being used to finance instruction in religious schools and to purchase necessary instructional material in violation of the Establishment

---

1. It should be obvious from our rather detailed and lengthy description of the complaint that the plaintiffs have totally failed to comply with the applicable rules of pleading. Rule 8(a) of the Federal Rules of Civil Procedure provides that a complaint shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Here, plaintiffs have pleaded a random assortment of what might have been called, under older rules of pleading, ultimate facts and evidentiary facts as well as legal theories and legal conclusions. We have overlooked all of this, however, in an effort to get at the heart of the plaintiffs' case.

and Free Exercise Clauses of the First Amendment. The Court recognized that its earlier decision in *Frothingham v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), "ha[d] stood for 45 years as an impenetrable barrier to suits against Acts of Congress brought by individuals who [could] assert only the interest of federal taxpayers." 392 U.S. at 85, 88 S.Ct. at 1944. However, the Court in its own words, "under[took] a fresh examination of the limitations upon standing to sue in a federal court and the application of those limitations to taxpayer suits." *Id.* at 94, 88 S.Ct. at 1949. After a careful examination of the complex and elusive concepts of justiciability and standing the Court announced that the crucial inquiry in taxpayer suits would be whether such plaintiffs, on the facts of a given case, could demonstrate "the necessary stake as taxpayers in the outcome of the litigation to satisfy Article III requirements." *Id.* at 102, 88 S.Ct. at 1954. This in turn would depend upon whether "the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assume that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.'" *Id.* at 99, 88 S.Ct. at 1952 (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)).

Perhaps the most controversial and troublesome aspect of *Flast* has been the two-part "nexus" test established by the Court for determining whether a taxpayer has such a concrete stake in the outcome of the litigation. First, the Court held that a taxpayer plaintiff must establish "a logical link between [his] status and the type of legislative enactment attacked." 392 U.S. at 102, 88 S.Ct. at 1954. This will be the case only where the challenge is to the exercise of congressional power under the taxing and spending clause of Article I, § 8 of the Constitution. *Id.* Second, a taxpayer plaintiff "must establish a nexus between that status and the precise nature of the constitutional infringement alleged." *Id.* This can be done only where the plain-

tiff alleges that the challenged action exceeds a specific constitutional limitation on the spending and taxing power. *Id.* at 103, 88 S.Ct. at 1954.

In *Flast* the plaintiffs were found to have satisfied both of these requirements. The challenge was to an exercise of Congress's spending power under Article I, § 8. Moreover, the allegation that such spending violated the Establishment Clause of the First Amendment amounted to a claim that a specific limitation on congressional spending was being ignored. That provision, history revealed, was at least in part specifically designed as a definite limitation on the government's ability to tax and/or spend in order "to favor one religion over another or to support religion in general." *Id.*

*Flast's* two-nexus test has received a substantial amount of analysis and criticism. Both those arguing for and against taxpayer standing have pointed to deficiencies in the formula announced by the Court. *See, e.g.*, Scott, *Standing In The Supreme Court—A Functional Analysis*, 86 Harv.L.Rev. 645 (1973); Bittker, *The Case of the Fictitious Taxpayer: The Federal Taxpayer's Suit Twenty Years After Flast v. Cohen*, 36 U.Chi.L.Rev. 364 (1969); Davis, *Standing: Taxpayers and Others*, 35 U.Chi.L.Rev. 601 (1968). Mr. Justice Harlan, dissenting in *Flast*, found there to be a remarkable "absence of any connection between the Court's standard for the determination of standing and its criteria for the satisfaction of that standard ...." 392 U.S. at 124, 88 S.Ct. at 1965. Mr. Justice Powell, in a later opinion dealing with taxpayer standing, indicated that while he would not overrule *Flast* on its facts, he would not "perpetuate the doctrinal confusion inherent in the *Flast* two-part 'nexus' test." *United States v. Richardson*, 418 U.S. 166, 180, 94 S.Ct. 2940, 2948, 41 L.Ed.2d 678 (1974) (concurring opinion).

However, whatever may be the perplexities and uncertainties surrounding the present law of standing under *Flast*, that decision as controlling Supreme Court precedent, must guide our determination

here. Indeed, *Flast* would appear to settle the issue of plaintiffs' standing in the instant case. Plaintiffs are challenging the expenditure of federal funds for the Army's chaplaincy program on the ground that such financing constitutes an establishment of religion proscribed by the First Amendment. Nevertheless, the defendants argue that plaintiffs are without standing. First, they contend that the plaintiffs have failed to allege in the complaint that they are *presently* federal taxpayers. This argument is apparently based on the language of paragraph 3 of the complaint: "Plaintiffs ... have paid and expect to continue to pay United States income taxes." We do not think, however, that this language will support the inference which the defendants seek to draw, *to wit*, that plaintiffs are not *now* federal taxpayers. While the language may be somewhat awkward it successfully sets forth plaintiffs' status as *current* federal taxpayers.

The defendants' second contention is that the challenged governmental action here, far from being a substantial direct grant-in-aid program as in *Flast*, amounts to "an incidental expenditure in an otherwise unchallenged program." Defendants' Memorandum of Law at 19. We find this argument unavailing. True, the chaplaincy program is not a direct grant-in-aid program as was the challenged program in *Flast*. But neither can the chaplaincy program be characterized as "an incidental expenditure of tax funds in the administration of an essentially regulatory scheme." *Flast v. Cohen, supra*, 392 U.S. at 102, 88 S.Ct. at 1954. Just what the Supreme Court had in mind by references to the Article 1, § 8 taxing and spending powers is far from clear. However, its citation to *Doremus v. Board of Education*, 342 U.S. 429, 79 S.Ct. 394, 96 L.Ed. 475 (1952), as an example of an earlier case where a taxpayer was properly denied standing consistent with its newly announced criteria lends little support to the view that the Court intended to exclude from taxpayer scrutiny programs such as the one now before us. *Doremus*

involved a challenge to a state statute which provided for the reading of Bible passages at the commencement of classes in the public schools. Such governmental action obviously involved little if any public expenditures. Here, the complaint indicates that substantial sums are expended to support the many aspects of the chaplaincy program. Moreover, the defendants have conceded that approximately $65,000,-000 has been appropriated for the chaplaincy program for the fiscal year commencing in October.[2]

Finally, the defendants argue that the plaintiffs are without standing "to assert any claim that the Army chaplaincy program is violative of the Free Exercise Clause because they have not alleged that their own free exercise rights have been infringed." Defendants' Memorandum of Law at 22. Plaintiffs' response to this argument is that they obviously have not raised any claims under the Free Exercise Clause. Plaintiffs' Memorandum of Law at 15 n. 10. Of course, the complaint casts at least some doubt on this proposition. While paragraph 1 states that the only declaratory relief sought is a judgment declaring the chaplaincy program to be violative of the Establishment Clause, the complaint also contains ten paragraphs, number 24–33, setting forth various allegations that the chaplaincy program inhibits the free exercise of religion. In any case it is now evident that plaintiffs do not challenge the chaplaincy program as violative of the Free Exercise Clause of the First Amendment.

In conclusion, while the court recognizes that the theoretical underpinnings of the Supreme Court's decision in *Flast* have been severely criticized and that its two-nexus approach may eventually prove to be unworkable, we believe that under the present state of the law plaintiffs have standing here as federal taxpayers.

*The Army Chaplaincy Program and the Establishment Clause*

█ No decision cited to the court by the parties nor unearthed by our own research

---

**2.** Defendants' Memorandum at 21 n. 17.

has squarely addressed the constitutionality of the Army's chaplaincy program or similar programs in other branches of the armed forces. It is the defendants' position that "a page of history is worth a volume of logic," *New York Trust Co. v. Eisner,* 256 U.S. 345, 349, 41 S.Ct. 506, 507, 65 L.Ed. 963 (1921) (Holmes, J.), and that our nation's historical practice of supporting a chaplaincy program dating back to the earliest days of the Continental Army speaks strongly in favor of its constitutionality. Moreover, the defendants urge this court to find in the various statements of several Supreme Court Justices and other federal judges regarding the military chaplaincy programs a body of constitutional jurisprudence upon which we may uphold the program's constitutionality. Plaintiffs, on the other hand, press this court to apply the method of analysis which has by now become standard in cases involving the Establishment Clause, *see Wolman v. Walter,* 433 U.S. 229, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977) (plurality opinion); *Roemer v. Maryland Public Works Bd.,* 426 U.S. 736, 96 S.Ct. 2337, 49 L.Ed.2d 179 (1976); *Committee for Public Education v. Nyquist,* 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973); *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). As stated by Mr. Justice Blackman in *Wolman:* "In order to pass muster, a statute must have a secular legislative purpose, must have a principal or primary effect that neither advances nor inhibits religion, and must not foster an excessive government entanglement with religion." 433 U.S. at 236, 97 S.Ct. at 2599. Application of this test to the Army's chaplaincy program, plaintiffs contend, leads inevitably to the conclusion that the program is unconstitutional.

■ At this time we do not pass upon the ultimate question as to the chaplaincy program's constitutionality, an issue which we believe to be of exceptional significance and not capable of easy or speedy determination. We only now decide that the defendants are not entitled to have this action dismissed on the pleadings. It cannot be said at this point in the instant litigation

that "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Sheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

We recognize, as defendants point out, that several Supreme Court Justices have expressed the view that a chaplaincy program in the military, funded by Congress, is constitutionally permissible. For example, Mr. Justice Stewart stated in his dissenting opinion in *School District of Abington Township v. Schempp,* 374 U.S. 203, 309, 83 S.Ct. 1560, 1617, 10 L.Ed.2d 844 (1963) (dissent):

> Spending federal funds to employ chaplains for the armed forces might be said to violate the Establishment Clause. Yet a lonely soldier stationed at some faraway outpost could surely complain that a government which did *not* provide him the opportunity for pastoral guidance was affirmatively prohibiting the free exercise of his religion. And such examples could readily be multiplied. The short of the matter is simply that the Establishment and Free Exercise Clauses of the First Amendment cannot accurately be reflected in a sterile metaphor which by its very nature may distort rather than illumine the problems involved in a particular case.

(Emphasis in original.) *See also id.* at 226 n. 10, 83 S.Ct. at 1573 n. 10 (majority opinion per Clark, J.); *Id.* at 296, 83 S.Ct. at 1610 (Brennan, J., concurring); *Id.* at 305, 83 S.Ct. at 1615 (Goldberg, J., concurring). Judges Bazelon, Leventhal and MacKinnon of the District of Columbia Circuit have expressed similar opinions. *See Anderson v. Laird,* 466 F.2d 283 (D.C.Cir.) (separate opinions), *cert. denied,* 409 U.S. 1076, 93 S.Ct. 690, 34 L.Ed.2d 665 (1972).

These statements reflect what we believe to be a proper starting point for analysis of the issues before us in that they make clear that in some circumstances the need to

accommodate the strictures of the Establishment Clause with the guarantees of the Free Exercise Clause might require a displacement of the traditional Establishment Clause analysis which plaintiffs urge us to apply. Thus, just as some courts have indicated that prison chaplaincy programs are constitutional because they provide access to religious opportunities not otherwise available to the inmate population, *see, e.g., Theriault v. Silber*, 547 F.2d 1279 (5th Cir.1977), *cert. denied*, 434 U.S. 871, 98 S.Ct. 216, 54 L.Ed.2d 150 (1977), the opinions of the judges which we have cited properly reason that because of the unique aspects of military life, especially the frequent isolation of military personnel, and the attendant inaccessibility of private religious facilities, the expenditure of public funds for a military chaplaincy program is justified and, indeed, perhaps even mandated.

Yet, to accept the proposition that a chaplaincy program may be tested under standards which would be inappropriate in other areas is a far cry from saying, as the defendants do, that it should not be tested at all. In our view, we would be abdicating our judicial responsibility if we were merely to hold that because a chaplaincy program may in some circumstances be constitutional, the program challenged here does, in fact, pass constitutional muster. In other words, under this rationale a chaplaincy program is constitutional under the Establishment Clause so long as its existence is reasonably necessary to insure that the Free Exercise rights of military personnel will not be abridged. Where a program does not meet that end or goes beyond that goal its constitutional justification evaporates.

The complaint at issue here, broadly construed, alleges that the program suffers from such infirmities. Without again reciting the details set forth above, we simply point out that the complaint alleges facts which, if proven, might well establish that the chaplaincy program is so overly broad in scope as to constitute a governmentally sponsored program of religious proselytism, and at the same time sadly deficient in providing religious support services to members of certain religious faiths. If these facts were to be proven, then, under a strict application of the standards we have enunciated the program would, at the least, be constitutionally suspect.

We would note in addition, however, that a determination of the validity of plaintiffs' claims cannot be made in a vacuum. Even if they could prove that the present chaplaincy program was not perfectly tailored to meet the goal of providing otherwise unavailable religious facilities to military personnel they would not necessarily, by that demonstration alone, establish the program's invalidity. Defendants appear to argue that there are additional justifications for the present posture of the chaplaincy program. We must confess that at the present time we cannot say with certainty what these justifications might be. The defendants have yet to do more than hint at their existence. Nevertheless, we certainly think that the defendants should be given the opportunity to articulate these considerations and to develop a proper factual foundation.

■ In short, we conclude that plaintiffs have alleged sufficient facts to withstand the defendants' motion to dismiss.[3] We do

---

**3.** The defendants have argued that the instant case presents a nonjusticiable political question unreviewable by this court. Defendants' Memorandum at 49–59. Essentially, it is their position that the terms upon which Army personnel are provided with opportunities for religious worship must be left to the legislative and executive branches of the government.

Defendants rely heavily on *Gilligan v. Morgan*, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973). There the Supreme Court held that a nonjusticiable controversy was presented where students at Kent State University sought to have the federal district court assume continuing supervisory authority over the activities of the Ohio National Guard. Mr. Justice Burger speaking for the Court stated:

It would be difficult to think of a clearer example of the type of governmental action that was intended by the Constitution to be left to the political branches directly responsible—as the Judicial Branch is not—to the electoral process. Moreover, it is difficult to conceive of an area of governmental activity

not in so holding mean to intimate in any way what the final outcome of this litigation will be. Our decision here should be read as indicating nothing more than the court's belief that the plaintiffs' claims cannot be given full and fair consideration in the absence of a fully developed factual record.

Accordingly, the defendants' motion to dismiss the complaint is denied.

It is

SO ORDERED.

in which the courts have less competence. The complex subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments .... 413 U.S. at 10, 93 S.Ct. at 2446.
In our view reliance upon *Gilligan v. Morgan* is misplaced. First, the plaintiffs here do not seek continuing judicial oversight over any aspect of the Army's program. They simply ask us to declare that the chaplaincy program as now run is unconstitutional and to enjoin further financ-

ing by Congress. Even more to the point is the fact that what is involved in this case is an essentially nonmilitary program separable from the vast bulk of Army operations which must be developed and administered by those capable of exercising professional military judgment. Of course, the Army's chaplaincy program cannot be reviewed in isolation. However, that we may have to defer to the opinion of military experts on certain aspects of our consideration does not, in our view, wholly preclude our inquiry.